IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | CASE NO. BK15-82016 |
| CHARLES DONALD LEONARD and | ) | A17-8010 |
| MARGARET ROSE LEONARD, | ) | |
| | ) | CHAPTER 7 |
| Debtor(s). | ) | |
| DINSDALE BROS., INC., d/b/a | ) | |
| DINSDALE BROTHERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES D. LEONARD, d/b/a | ) | |
| LEONARD CATTLE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is before the court on the debtor-defendant's motion for summary judgment (Fil. No. 26) and objection by the plaintiff (Fil. No. 34). Victor E. Covalt III represents the debtor, and John A. O'Brien and Scott C. Sandberg represent the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is granted.

### BACKGROUND

The debtor, Mr. Leonard, was in the business of buying and selling cattle on behalf of various buyers and sellers as well as for his own account. Prior to filing his bankruptcy petition, he purchased cattle from Rezac Livestock Commission Company and sold those cattle to plaintiff Dinsdale Brothers. Dinsdale Brothers paid Mr. Leonard, but his payment to Rezac was returned for insufficient funds. So, Rezac filed a lawsuit in federal court in Kansas against Dinsdale Brothers and Pinnacle Bank, alleging *inter alia* that Mr. Leonard acted as an agent for the Dinsdales. Rezac has also filed a claim in this bankruptcy case. Dinsdale Brothers filed this adversary proceeding to except from discharge under 11 U.S.C. § 523(a)(4) any debt that may result from an award of damages in the Kansas litigation. Mr. Leonard now moves for summary judgment on the basis that no fiduciary relationship existed between him and Dinsdale Brothers which would render a debt non-dischargeable.

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity[.]" § 523(a)(4). To

prevent the discharge of a debt under § 523(a)(4), a creditor must establish the following two elements: (1) that a fiduciary relationship existed between the debtor and the creditor; and (2) that the debtor committed fraud or defalcation in the course of that fiduciary relationship. *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

Whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. *Arvest Mortg. Co. v. Nail (In re Nail)*, 680 F.3d 1036, 1039 (8th Cir. 2012) (citing *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir. 1997)). "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. *See Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004) ("fiduciary" used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985) (holding that for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship). The substance of a transaction, rather than the labels assigned by the parties, determines whether there is a fiduciary relationship for bankruptcy purposes. *Nail*, 680 F.3d at 1040 (quoting *Long*, 774 F.2d at 878-79).

Defalcation is the misappropriation of trust funds or money held in any fiduciary capacity, and the failure to properly account for such funds. *Cochrane*, 124 F.3d at 984 (quoting *Lewis v. Scott*, 97 F.3d 1182, 1186 (9th Cir. 1996)). The United States Supreme Court has interpreted "defalcation" to require intentional wrongdoing. *Bullock v. BankChampaign, N.A.*, ___ U.S. ___, 133 S. Ct. 1754 (2013).

For a defalcation to occur within the scope of Section 523(a)(4), "a culpable state of mind" is required wherein the debtor has "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, ___ U.S. ___, 133 S. Ct. 1754, 1756, 185 L. Ed. 2d 922 (2013). "[W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that criminal law often treats as the equivalent." *Id.* at 1759. "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* [citation omitted]. Exceptions to discharge under Section 523(a)(4) are construed narrowly and therefore the burden lies with the creditor opposing discharge. *In re Thompson*, 686 F.3d. at 944 (citing *In re Nail*, 680 F.3d at 1039).

*Fleming Mfg. Co. v. Keogh (In re Keogh)*, 509 B.R. 915, 934 (Bankr. E.D. Mo. 2014).

### *FACTS*

For purposes of this motion, these facts are uncontroverted:

1.  The plaintiff, Dinsdale Bros., Inc., is a Nebraska corporation.

2.  Defendant Charles D. Leonard is an individual residing in Douglas County, Nebraska, and is one of the debtors in the underlying bankruptcy case filed on December 14, 2015. The case was filed as a Chapter 11 and subsequently converted to a Chapter 7.

3.  This is an adversary proceeding timely filed to determine the dischargeability of an apparently unliquidated, contingent and disputed claim for unspecified damages for defalcation in a fiduciary capacity under 11 U. S. C. § 523 (a)(4).

4.  This court has jurisdiction over this case under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

5.  At the time of these events, Mr. Leonard was engaged in buying and selling feeder cattle under the name of Leonard Cattle Company for and on behalf of his own account or on the behalf of others.

6.  Mr. Leonard had sold cattle to the Dinsdale operation several times over the years.

7.  On September 29, 2015, Mr. Leonard purchased 668 yearling steers and heifers at auction at the Rezac Livestock Commission Company in Kansas, purportedly on the instruction of Dave Wahlert of Dinsdale Brothers. Mr. Leonard used his own bidder number to bid at the sale and Rezac billed Mr. Leonard for his purchases.

8.  Mr. Leonard arranged for trucking and insurance and delivered the cattle to Dinsdale Brothers by shipping them to the designated feed yards in Colorado.

9.  Mr. Leonard's bookkeeper mailed a check to Rezac the following day, September 30, 2015, in the amount of $980,361.45 to pay for the cattle.

10.  Mr. Leonard's bookkeeper prepared an invoice to bill Dinsdale Brothers for the cattle. The purchase price as billed to Dinsdale Brothers was calculated by adding the trucking, veterinary, and insurance costs to the price of the cattle paid plus a charge of 75 cents per hundredweight for Mr. Leonard's services.

11.  Dinsdale Brothers received the cattle and paid Mr. Leonard $1,004,361.49 by wiring funds to the Leonard Cattle Company account with Pinnacle Bank on October 1, 2015.

12.  Mr. Leonard was experiencing financial difficulties during this time period and when the check he mailed to Rezac to pay for the cattle was presented to Pinnacle Bank for payment in early October 2015, it was returned for insufficient funds. Upon Mr. Leonard's instruction, Rezac

presented the check a second time, but by then Mr. Leonard's account had been closed and the check was not honored.

13. Rezac was not paid for the cattle and filed a claim in Mr. Leonard's bankruptcy case for the purchase price. Rezac also filed a lawsuit against Dinsdale Brothers and Pinnacle Bank in federal court in Kansas. The case is currently pending.

14. Rezac's Kansas lawsuit includes several causes of action against Dinsdale Brothers and/or Pinnacle Bank, including breach of contract, conversion, quantum meruit, unjust enrichment, and civil conspiracy. Specifically, Rezac alleges that: "Dinsdale Bros. engaged Leonard to act as its agent for purpose of purchasing livestock for and on behalf of Dinsdale Bros from Rezac's auction."

15. As a result of the allegations against it in the Kansas lawsuit, Dinsdale Brothers filed a proof of claim in Mr. Leonard's bankruptcy case for its "incidental and consequential damages in an amount to be determined resulting from Claimant's need to defend title and a contingent claim for any title losses Claimant experiences in an amount to be determined." Dinsdale Brothers also filed a separate unsecured claim in an "undetermined" amount because Mr. Leonard "may have misrepresented his business relationship with Claimant."

16. In its amended complaint in this adversary proceeding, Dinsdale Brothers specifically "denies that the Debtor acted as Dinsdale Bros.' agent and fiduciary." However, it has filed this adversary proceeding to protect itself in the event it is held liable to Rezac in the Kansas case.

## *DISCUSSION*

In support of his motion for summary judgment, Mr. Leonard asserts that there are no material facts in dispute that there was no trust or fiduciary relationship between Mr. Leonard and Dinsdale Brothers. Dinsdale Brothers believes Mr. Leonard has taken contradictory positions in describing the capacity in which he was acting when he purchased the cattle at the Rezac auction. In a letter to Rezac dated October 15, 2015, setting out his position on the transaction with Rezac, Mr. Leonard stated he "charged a commission only and acted as an agent only" for Dinsdale Brothers in purchasing the cattle on September 29, 2015. Ex. 3 to Pl.'s Br. in Support of Obj. to Mot. for Summ. J. (Fil. No. 35). In a September 2017 deposition, Mr. Leonard testified he purchased and resold the cattle as a dealer and charged Dinsdale Brothers a fee for his services, rather than a commission. He further testified that he believed Dinsdale Brothers trusted him to act on its behalf. From this evidence, Dinsdale Brothers extrapolated the existence of a fiduciary duty on the part of Mr. Leonard and has proceeded accordingly in this lawsuit.

Despite Dinsdale Brothers' spirited deposition questioning and impassioned arguments on the motion, the evidence simply does not support the creditor's position on this issue. A fiduciary relationship for purposes of § 523(a)(4) is a specialized creature. It is narrower than the usual scope of a fiduciary under common law as someone who is required to exercise good faith and due care in acting for the benefit of another. Rather, a fiduciary relationship in the context of the Bankruptcy Code must arise from a technical or express trust, not from a constructive trust or a mere contractual

-4-

relationship. *Barclays Am./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878-79 (8th Cir. 1985).

> "A technical trust is one imposed by statute or common law." *Aslakson v. Freese (In re Freese)*, 472 B.R. 907, 923 (Bankr. D.N.D. 2012) (footnote omitted).
> . . .
> "An express trust is created by a direct, positive, and objectively-manifested act under contract, or under an instrument such as a deed or will." *Id.* (quotation omitted). "Typically, the parties to an express trust prepare a declaration of a trust, define a trust res and outline specific duties and responsibilities of the trustee." *Id.* (footnote omitted).

*MarPad, L.L.C. v. Seevers (In re Seevers)*, 574 B.R. 832, 856-57 (Bankr. D. Neb. 2017).

Under these parameters, not every position of trust is a fiduciary relationship for purposes of § 523(a)(4). It is clear from Mr. Leonard's deposition testimony that he purchased the cattle at Rezac's for Dinsdale Brothers. He testified to a long-standing business relationship with Dinsdale Brothers in which he had purchased cattle for them for a number of years. In his line of work, in which he has long functioned as an intermediary between those with calves or yearlings to sell and those who wish to purchase said calves or yearlings, he understandably would desire to be deemed trustworthy by the buyers and the sellers and presumably would act accordingly. However, this is not the sort of trust relationship or agency relationship that would give rise to a technical or express trust.

Dinsdale Brothers asserts that whether Mr. Leonard "acted as Dinsdale Bros.' agent and fiduciary, and any corresponding damages arising from the Debtor's fraud or defalcation while acting in that capacity, are issues to be determined in the Kansas case." I disagree. Mr. Leonard is not a party to the Kansas case. That case involves many issues, but one issue that is *not* involved in that case is whether Mr. Leonard was acting as a fiduciary for Dinsdale Brothers for purposes of § 523(a)(4).

The evidence presented shows that Mr. Leonard bid at the Rezac auction under his own bidding number and billed Leonard Cattle Co. for the purchases. Dinsdale Brothers is not referenced in Rezac's invoices. Mr. Leonard made all the arrangements to deliver the cattle to Dinsdale Brothers and issued invoices from Leonard Cattle Co. to Dinsdale Brothers. The invoices do not mention Rezac. In response to the motion for summary judgment, Dinsdale Brothers has failed to present *any* evidence of a technical or express trust between Mr. Leonard and Dinsdale Brothers. In fact, Dinsdale Brothers specifically denies any such relationship. At most, the evidence shows that the parties here had a contractual relationship and, as noted above, a mere contractual relationship does not support an exception from discharge for defalcation by a fiduciary.

Moreover, even if a fiduciary relationship could be identified here, there is no evidence of defalcation, which requires intentional wrongdoing. Counsel for Pinnacle Bank and Dinsdale Brothers expended significant effort in the deposition of Mr. Leonard on establishing Mr. Leonard's state of mind concerning the ability of the recipients of his checks to get paid when he knew the

balance of the checking account was insufficient to cover those checks. He repeatedly and emphatically testified that he was working with the bank to increase his credit limit, as well as trying to locate additional funding or collateral. He maintains that he believed he and the bank could reach a mutually satisfactory arrangement concerning his credit limit right up until the time the bank closed his account. Dinsdale Brothers has not provided evidence of intentional wrongdoing, or that Mr. Leonard's actions were anything other than those of a businessman who was scrambling to save a foundering business.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Here, the plaintiff has failed to demonstrate any genuine issue of material fact as to the existence of a fiduciary relationship between the plaintiff and the debtor, or a defalcation occurring in the course of a fiduciary relationship. Accordingly, summary judgment will be granted to the debtor-defendant and the complaint will be dismissed.

IT IS ORDERED: The debtor-defendant's motion for summary judgment (Fil. No. 26) is granted. Separate judgment will be entered.

DATED:  January 17, 2018.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    \*Victor E. Covalt III
    John A. O'Brien
    Scott C. Sandberg
    U.S. Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.